United States Court of Appeals for the Federal Circuit is now open and in session. God Save the United States and this Honorable Court. The first case for argument this morning is 20-1009, A Love Soot Design v. Daktronics. Mr. Bressler, whenever you're ready. Good morning, Your Honors. Ken Bressler from Blank Roam for Appellant Daktronics. This is a case where the jury found infringement under the Doctrine of Equivalence on four elements. I want to focus on one of those elements, which is element H, and how that element was vitiated by the finding of infringement under the Doctrine of Equivalence. This is a de novo issue with no deference given to the trial court or the jury. Now, if Your Honors would not mind turning to the blue book and page 4. There are two figures there that I'll walk Your Honors through that will help us to visualize what is happening in this case and the invention. The invention is described in Claim 27 as simple and can be seen in figure 1 from page 4 of the blue brief. Obviously, I cannot see, Your Honors, whether you've had an opportunity to turn to that page, but I'll give you a couple of seconds if that's appropriate. Well, you don't want to use too much of your time, so please proceed. Okay. So, Claim 27 describes a rotating drum, which is green, that flies along a carriage, which is gray, over a fixed screw, yellow, so the cables can be wound and unwound around the drum without getting tangled. Looking at Claim 27 as a whole, it describes under element C, the hollow drum, under element E, the hollow… Well, let me interrupt you there. I'm sorry. This is Judge Proust. Let me just get to the heart of it for me because I think this is actually, candidly, at least speaking for myself, I'm really struggling with this because it seems, as a procedural matter, it's very odd. There was no claim construction here. The other side asked for a claim construction, which I think, in your view, would have done the opposite of what was required. It was rejected by a trial judge, but they were left with a plain and ordinary meaning. And it seems to me that, at the end of the day, that claim construction of what a plain and ordinary meaning is kind of drives the whole vitiation argument. Even the second judge on J-Mall, the majority of his determination was based on his construing the claim in a way that it hadn't been construed previously. Am I right about that so far? Are you agreeing with what I'm saying? Yes. Yes. The claim is very plain. So there was no claim construction. We've got an old case called O2 Micro, and there we said, no, no, no, no. Plain and ordinary meaning wasn't good enough where the heart of the dispute came down to claim construction, and the claim construction should have been done. You knew this was part of the dispute in the case. Did you ever seek a specific claim construction on plain and ordinary meaning? No, Your Honor. We sought plain and ordinary meaning. We think this claim is very clear that it requires both a hollow hub and a hollow drum, both of them, to be sized such that the hollow drum can receive the screw. It doesn't seem like there's anything that requires any construction, Your Honors. And I think that the way that OSD is construing it, as well as the district court, it just makes no sense in context. Well, let me ask you a specific part of that that confused me. If you look at Appendix 22, which is in the heart of the district court Jamal determination, towards the middle of that page, he cites back to Judge Sweet construction. And then he says that construction points out that the Vortech hub drum assembly unquestionably receives the screw. Is he right about that, or what's your decision? Not at all. Well, I'm confused. How is what Judge Sweet construed, the hollow hub as being, how does that not necessarily get you where the district court was, the second district court, that is? Well, firstly, it's a de novo review, so what Judge Daniels found is not relevant here. Secondly, there's no such thing as a de novo review. Well, you keep saying de novo review. Is it de novo review because it's vitiation or because you think it's a claim construction dispute? It's a legal issue, Your Honor. Vitiation, it's not a claim construction issue. It's plain and ordinary meeting. Vitiation is a legal issue to be determined on de novo. There is no, this drum assembly is a different part. It's different from the hollow drum. The hollow drum is only described once in the specification, and it's very simple the way it's described. And I'll read it to you because I think it's important. It's on Column 4, Lines 39 to 47. The only place hollow drum is mentioned. It says, which hub is hollow so the screw can pass via the hollow hub inside the drum? I'm sorry, it's the only place hollow drum is mentioned. Inside the drum, so which hub is hollow so the screw can pass via the hollow hub inside the drum, which is also hollow. Storing the screw inside the hollow drum is possible because the drum is not mounted on a separate shaft. Drum assembly has nothing to do with this. The claim is very clear. It uses the term hollow hub, which is described as being hollow so the screw can go into it, and it uses the term hollow drum, so hollow hub and hollow drum. Two different terms, different than the drum assembly, Your Honor. Well, let me then take you to the other piece. I mean, DOE is a challenge for a number of reasons, including that we've got these two doctrines. One is vitiation, and the other is function way result. And function way result is the most frequently used. And that's a problem for you, right, because under function way result, we're just looking for substantial evidence of the jury, and there was testimony, was there not, that it functioned in substantially the same way and substantially the same result. So what do you do about that? No, there was not. There was no testimony about that? There was no testimony. No, Your Honor. We went through the short snippet of testimony cited by OSD for supporting their position that there was substantial similarity. And we went through that, and I'll find exactly where it is in the brief, and clearly it just simply does not. And that is on pages 14 of the yellow brief, where we point out the testimony. Well, I don't have your brief, but I'm looking at the testimony. Can you look at what I've got here is appendix 9264 through, you know, about five or ten pages. I can try to turn that. And I know on 9266, this expert is talking about literal infringement. So a lot of this stuff is literal infringement, and the difference, but there is testimony, right? Is there not? Well, there's testimony. I'm sorry, what page would you like me to look, Your Honor? 9267. I'm sorry? 9267. I am there. There is testimony where Mr. Soot says that they're identical, but he in no time compares the function by result and say that there's substantial similarity between a winch that has a hub that blocks the screw, which has a solid shaft blocking the screw from entering the drum. He did not go through the analysis to say that there's substantial similarity between that and a winch that has a hollow hub and a hollow drum so the screw can pass through the hollow hub into the drum. He simply does not go through the analysis. And, by the way, Your Honor, even if he did, that doesn't negate the issue of vitiation. Here you have a claim that is entirely vitiated if the Vortec infringed. The claim requires, and I'll turn to it, a hollow hub and hollow drum being sized such that the screw can move into the hollow hub to allow the hollow drum to receive the screw as the drum rotates. None of that is here. There's no hollow hub because the shaft runs through the drum and extends in a solid fashion for two inches past the drum, preventing the screw or preventing the hollow hub from receiving the drum, the screw, to allow the drum to receive the screw. The hollow drum, at the same time, also cannot receive the screw because there's a shaft going through it. Now, it's very important to understand, again, going back to the specification, talking about the hollow drum. The only place it talks about the hollow drum again, they say storing the screw inside the hollow drum is possible because the drum, I'm sorry, this is column four, lines 39 to 47. Storing the screw inside the hollow drum is possible because the drum is not mounted on a separate shaft, but the drum itself forms its own shaft. The Vortec has a solid shaft running through the drum and extending 13 inches out of the drum. Through those inches, there's no borehole. The screw is blocked from getting into the drum. You can see that, Your Honors. Looking to Blue Breeze, page four, figure two, shows the Vortec. You'll see that instead of there being a hollow drum, there is a thick, solid steel shaft going through it. The hollow hub, which is what OSD says is a hollow hub, is not hollow all the way. There's two inches of solid steel bending free. Counselor, when does that make a difference with respect to the function way, the result test, if the hub is only two inches away from the drum portion? Well, it reads out the entire claim. How is the public to understand what this means? How can you possibly understand it? This is very similar to Judge Lurie's decision in the Duncan parking case, where you have a requirement that the parking— Does it matter if one finds that the hub and the drum are one piece? Well, they can't be one piece. It makes no sense if it's one piece, because if you look to other claims in the other elements, Sutton knew how to write something where it would have a hollow drum that was not hollow. So compare this claim to claims 10, 16, and 31. Those claims have a hollow hub in element F, but not a hollow drum. Those claims only require a drum, unlike claim 27 requires a hollow drum. And those claims do not require the drum be sized to receive the screw like in claim 27. There's clearly a distinction between a hollow hub and a hollow drum with two separate terms, one defined in element C and one in E. And why would it be written element H if they were the same? Why would you write a claim that everybody relies on that says hollow hub and hollow drum being sized such that the screw can move into the hollow hub? Now, OSD recognizes this is an issue, and he tried to get the district court to construe element H such that the screw only had to go into the hub, but the district court rejected that. And there's no response even to the fact that by OSD that they're having raised this issue before means that basically the case is over. I mean, that issue is over. It's been decided by the district court that that's not what it means. Now, there's another problem. If the hollow drum and the hollow hub were the same and only the hollow hub had to receive the screw, then it would be duplicative. Element H would be superfluous because hollow hub is already defined as a portion of the drum end cap with an elongated opening to allow passage of the elongated screw. That's the same thing as the hub being sized to receive the screw. It means element H would be superfluous, and there would be no reason for it to be there. So what we have here is a situation where we have an element completely read out of the claim  Jared, am I right? Did we hear the timer go off? That is correct. There are two minutes remaining for the rebuttal period. Okay. Thank you. All right. So why don't we reserve your rebuttal, and let's hear from your friend on the other side, Mr. Ballender. Thank you, Your Honor, and may it please the court, and good morning. I will start by saying just a preliminary comment based on the questions that I thought about O2 micro, and I thought about it because what we do have now is a situation where, on appeal, defendants have decided to pursue a claim construction that was never presented by them either to the district court or to the jury. All right. I take your point. I take your point, Mr. Ballender. This is Sharon Perry. But the problem, looking at it from the other side, is that your claim construction was rejected, and the district court, the second district court judge on J Maul, is really doing a claim construction. He's really saying that the drum includes the hub, and they're one and the same. I mean, he really does rest, as I understand, but you can disagree with me and tell me why, please. But his initiation analysis, which is the principal part of his general opinion, does rest on the claim construction that was not received and was contrary to what went down before. And even in your own brief in red, you talk about it 38. It sounds as if, if you read this independently, it sounds as if the jury did the claim construction. They agreed with this claim construction, and that's how they got. So who has the burden to raise those two micro? Tell me that. I mean, did the district court ever get a claim construction beforehand that goes to what you're relying on now? Well, there are two responses. The first is I don't think the jury was doing a claim construction. They actually, had they adopted what I think is the proper construction of these terms, and it's also the plain meaning in my view, and that's why the plain meaning still works in this case, is that the drum is repeatedly described throughout the entire record in this case, including its end caps with their hollow hub. And what Daktronics did at trial is they didn't really try to address that because they just said plain meaning, and they kept on pointing to their drum and saying we don't have an end cap with a hollow hub. And because the jury found that there was no hollow hub literally met by the accused product and that the end cap that included their extended hub was an equivalent to a hollow hub, they ultimately concluded that while the age was satisfied. Let me just, let's take the hub out of, the end caps out of it. Your construction and what the district court, as I understood it, said is the hollow drum includes the hub. Yes. Right? Yes. Okay. If that's the case, then why wasn't there literal infringement? And in fact, that's, you know, my question about literal infringement is because when I read the testimony of your witness, he essentially reaches his functionally result test because he says they're identical. So why wasn't, why if I'm on the jury and drum, I think the correct claim construction is the hollow drum includes the hub. Why isn't that literal infringement? It isn't. They concluded it wasn't literal infringement because they also concluded that the, the accused product did not include literally the hollow hub. And because that's part of element H, which was a disputed term, they concluded that while it has the equivalent of a hollow hub, that can't make it literally infringing. It still has to be doctrinal equivalence analysis. And I think that they were heavily swayed by some of the instructions they received on the earlier limitations, the base member and the first name. Counsel, this is judge Lori. You did win a jury verdict, but you won it on equivalence relating to four claim limitations. Have we ever found infringement under the doctrine of equivalence where four claim limitations weren't literally met? I'm unaware of a case, but I have to, quite frankly, Your Honor, I did not look specifically to see what the maximum number of equivalent elements. I have to say that this really unfolded as two variations between the two designs, which were extrapolated across multiple limitations. I think the questions of equivalence kind of line up because it's a mechanical, an integrated mechanical device. So you have a base member that has to fly. Equivalence is sort of a close, iffy issue. And, hey, you've got four of them, and you've got to cross-appeal on willfulness. How can one willfully infringe when you're not meeting four claim limitations? That almost doesn't pass the straight-face test. Well, I can go into that a little bit. That's on our cross-appeal. We think that there was obvious copying. And, in fact, Judge Swee, on Appendix 60, page 60. If they were copying, there would have been literal infringements. Pretty poor copy when you get four things that are different. First of all, the earlier designer, I think there was evidence of copying, and we presented it, and Judge Swee found it not to be speculative. He said circumstantial evidence demonstrated copying. Whether that is can you copy a device and have four separate elements of doctrinal equivalence, I think you can. However, recognizing where we are on this appeal, only one of those elements is now being challenged as a matter of law. And, quite frankly, I think the challenge lacks merit because the obvious claim construction and what the jury concluded with the obvious ordinary meaning of this term hollow drum is a drum that includes its end caps and hollow hub. And when you read the claim with that in mind, it makes perfect sense. Yeah, but that's where I'm really falling short because the District Court, the first District Court judge who did the claim construction, never construed the claim that way, right? On the other side, Detronix, I think you misspoke perhaps because looking at the appendix, it's JA 836, Detronix did argue with the Markman that the hum and the drum are separate, and I think that was the plain and ordinary meaning they were proposing. So there was no claim construction by Judge Swee that said that the drum is the same and includes the hub, right? Well, I don't think those are inconsistent statements. I don't think that the fact that the hub is obviously a separate component of the drum, and you have to do things to the hub, as required by the claim, that are, the drum is an umbrella term. And when the screw receives, I'm sorry, when the drum receives the screw, that means it's anywhere within the old. But the hollow drum, your position is that the hollow drum includes the hub, right? The hollow drum includes the hub. Okay. Can I just ask you one other question before time runs out? Sure. And that goes to this equivalence point, and as Raina mentioned, it's only, you know, the two inches. Would your argument be different? What if it were three inches? What if it were 10 inches? Why, and given that we think that the claim construction overrides everything, would it make a difference? Would there not be the same equivalence that you're arguing for if it were 10 or 10 inches, 12 or 20 inches away? I don't know if it would change my argument. I'd have to go back into the function way result and how those questions were addressed by our expert and their expert. My gut feeling is that probably a three inch probably wouldn't make a difference. And when you get out to 10 or 12 inches, one of the benefits of this thing was to have a more compact design. So, you know, at some point maybe you would cross that barrier, but I don't think that that's what's happened in any of this sense. Remember, the innovation here – Well, you're right, it's a compact design. I shouldn't see much testimony or any about the discussion of that because, yeah, I do think that the result here and the function is to have a compact design. And I didn't see much saying that two inches doesn't make a difference to the compact design, but something more would. Is there some testimony you can point me to? I can't. And quite frankly, the compact design was a subsidiary benefit. The real benefit was to protect the screw, and that was clearly done by their design where they have an 11-inch bore for a 10.75-inch screw, so it's fully enclosed within the hollow hub, which would emulate it precisely. And that's an important aspect for these winches because they sit around unused for long periods of time, and dust and other debris can get into the screw and cause problems. And I'm going into my – and I purposely will go into my remaining time because I want to address not only that there's such – I mean, the intrinsic record here is so one-sided, and that's why ordinary meaning works. And, in fact, their expert conceded that the ordinary meaning is dictated by what the definition is in the spec. The definition for hollow drum in the spec was clearly laid out to include both the hubs, and they don't have any counter to that at all. When you look at H, you can see that it's talking about an arrangement where the hub and the drum are sized in a way to allow for the screw to end up in a protected, fully enclosed, received by the drum, which includes both its end caps, so that it's dust-free. Dust-free. I appreciate that, but I'm sorry to interrupt, but we were both under a short timeframe. Right. Didn't prior art designs also protect the screw? There was a – I don't know. No, certainly not in the theater winch business. And the obvious one would be the screw that was shown in the Bellagio, which was of record in front of them. I think there were covers that they put on screws in some of the designs earlier, but I don't think there's any record of that in the proceedings. However, that's the critical result. I mean, you know, Mr. Soot came up with a radical new way of doing this. He fixed the screw, and he made the drum rotate with a threaded nut at the end so that it could be protected at one end of its travel, and that's what the specification covers. I guess I will reserve – well, let me just touch two things. You haven't asked much about damages or any of the other things. The Second Circuit doesn't allow review on great weight of the evidence. And one thing I wanted to extend that, to make that point, is that in the Robinson decision, that dealt with the damage where they did challenge great weight of the evidence and was denied on a new trial basis, and that was – Robinson ruled in the Second Circuit that that wasn't subject to review. I will reserve the rest of – how much time do I have left? I have three minutes? Two minutes and 34 seconds. All right. Thank you. But, you know, sir, I just want to make sure this is all done fairly, and it's very – cross appeals are often somewhat confusing, and on the phone it's even more confusing. I heard you make one brief statement in response to Judge Lurie on copying, but other than that, have you really pressed your cross appeal? Well, I – You don't get to rebut it if you haven't raised it, so – Okay, let me – yes, let me make sure I'm clear on this. We are pursuing a cross appeal. It's clear that Judge Sweet on willfulness made a mistake. He had a – he failed to – he applied the wrong burden of proof, and he required egregious conduct for a willfulness finding to present the willfulness issue to the jury. HALO talks about enhanced damages. It doesn't discuss the issue as – and our position is the records associated specifically with their patent counsel, and the knowledge of the counsel got detailed knowledge of the 485 patent, which was shared with some of the management at Daktronics, established knowledge sufficient, and with the copying record being the same. So I will reserve the rest of my time on that, and thank you, Your Honor. Any other questions, I'll be glad to take. Okay, and the time only comes if the other side addresses the cross appeal, so we shall see, but thank you. All right, Mr. Bresler, we'll give you – I think we were down to two minutes. We'll give you three minutes for rebuttal, or four minutes if you need it. Mr. Bresler? I'm sorry, I put you on my phone. Yes, do you hear me now? Oh, okay. I'm sorry, that was my fault. As instructed, I muted myself. This comes down to whether the hollow drum includes the hollow hub. Why would a claim be written to have both the hollow hub and hollow drum being sized so the screw can move into the hollow hub to allow the drum to receive the screw? If it were written – if it were only required the hub to receive the screw, then it would say a hollow hub is sized to receive the screw. Now, on top of that, as I mentioned earlier, if the hollow hub only has to receive the screw. I'm sorry, I'm losing you. I don't know if anybody else can hear you, but I'm losing you. I lost him too. Same here. Do you hear me now? Yes. Did I fall off? It looks like my – did you hear me? Hello? You fell off for about 30 seconds. Oh, okay. I'm sorry, my earphones obviously ran out of juice. Do you hear me now? I'll speak to the speaker. We can hear you. Yes. Thank you. Okay. What I was saying is it says that this rests on the hollow drum and the hollow hub being the same. Why then would the claim be written to have the hollow hub and hollow drum being sized so the screw can move into the hollow hub to allow the hollow drum to receive the screw? It would just be written a hollow hub sized to receive the screw. That's not how it's written, and people have to be able to rely on it. Why would you use hollow hub and hollow drum, two separate terms? Moreover, many of the other claims and throughout the specification use just drum, not hollow drum. This is very clear that it's only that this hollow drum has to receive the screw. And again, I refer you to claims 10, 16, and 31, which only use a drum and a hollow hub. They don't refer to a hollow drum, and they don't require the hollow drum to receive the screw. Finally, if that theory is correct by OSD that the hollow hub and hollow drum are the same and the screw only has to be received by the hollow hub, then element H would be superfluous in light of element E, which was construed as a portion of the drum end cap with an elongated opening to allow passage of the elongated screw. That's the exact same thing as a hollow hub sized to receive the screw. So that's another basis for vitiation. So this is not a question. We talk about the two inches away. This is not a question of degree. This is a question of a complete absence of the structure. If the claim read a screw that passed within two inches of the drum, or one inch of the drum, and it was actually two inches, then that's a question of degree. This is a question of a screw that cannot go into the hollow drum. It simply cannot be received by the hollow drum because there's a shaft running through the hollow drum that is solid for two inches thereafter. So it's not a question like many of the cases that discuss vitiation, where it's a question of it's a bit of degree. One inch, two inch, three inch, what's the difference? Here it's a complete absence of the claim element, which requires that the drum itself, as opposed to the hollow hub, be sized to receive the screw, and it requires a hollow hub that is sized to allow the drum to receive the screw. The hollow hub is solid at the end. It is not sized to allow the drum to receive the screw. Unless there are any questions, Your Honor, I'll rest. Okay. So let me just review the bidding. I think that because you did not address the cross appeal in your remarks, as I understand it, that means that there's no rebuttal by Mr. Bollinger. Does everybody concur on that? I certainly do. I think so. I'm sorry. Yeah, this is Mr. Bollinger. I guess that's right. I'm sorry? That wasn't true. I'm sorry. This is Mr. Bollinger. I didn't hear any points raised on willful infringement, so you're right. All right. Thank you. All right. We thank both sides for their indulgence and the cases submitted.